**Gregory WOOTEN, Administrator of the Estate of Lester Lee Wooten, Deceased, Plaintiffs,**

**v.**

**JOHNSON & JOHNSON PRODUCTS INC., a corporation, McNeil Consumer Products Co., a division of McNeilab, Inc., a corporation, and McNeil Pharmaceutical Co., also a division of McNeilab, Inc., a corporation, Defendants.**

No. 84 C 0853.

United States District Court, N.D. Illinois, E.D.

May 29, 1986.

**3.** George Cannon, Esq., was counsel for the Government at trial.

Leonard Miller, Rhomda L. Casady, Chicago, Ill., for plaintiffs.

William P. Richmond, Thomas A. Roberts, Eric F. Quandt, Sidney & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Presently pending before this Court are several motions, all of which stem from, and include, the defendants' motion for summary judgment filed on February 5, 1985 Subsequent to the filing of that motion, certain conduct by the plaintiff's counsel, which is set forth more fully in this

Court's opinion dated July 16, 1985, led this Court to vacate Judge Bua's dismissal of the case but to order plaintiff's counsel personally to pay defendants the sum of $1,280.00 as a sanction pursuant to Fed.R. Civ.P. 37(a)(4). Unfortunately, that sanction apparently was not severe enough to cause plaintiff's counsel to change his willingness to comply with this Court's discovery orders because the Court was forced to enter another order sanctioning plaintiff's counsel personally for his failure to timely produce plaintiff's expert witness, Dr. Bernard Lerner, for his deposition as previously ordered by this Court. This Court's order stated:

Plaintiff's motion to vacate this Court's order of October 28, 1985 is entered and continued to November 8, 1985. If plaintiff's expert's deposition is not completed by November 7, 1985, the Court will bar the use of his testimony. Defendant is ordered to submit an affidavit of his fees and costs relating to his attempts to depose plaintiff's expert and in obtaining the order barring his testimony within ten days. Plaintiff's attorney is given five days thereafter to object, and defendant is given three days to reply, after which this Court will enter an order requiring plaintiff's attorney again to personally pay the defendant's reasonable costs and attorneys' fees as a sanction. See *Wooten v. Johnson & Johnson*, 621 F.Supp. 747 (N.D.Ill., 1985). The clerk of the court is directed to send a copy of the transcript of today's proceedings and of the proceedings of Monday, October 18, 1985 to the plaintiff personally, the cost of which plaintiff's attorney is ordered personally to pay.

Defendants' counsel submitted an affidavit on November 12, 1985 stating that he expended eleven hours at the rate of $75 per hour, and thus defendants incurred a total expense of $825.00 in legal fees in attempting to depose plaintiff's expert. Although plaintiff's counsel objects to this amount, this Court finds it to be reasonable and not excessive, particularly in light of

the fact that, according to defendants' counsel, it does not include the following:

> ... numerous office conferences with the Sidley & Austin partner supervising the present case, telephone conferences with the client regarding attempts to depose plaintiff's expert, preparation of an amended notice of deposition, defense counsel's having to wait for plaintiff's expert more than two hours each day that he was scheduled to appear for his deposition, numerous telephone calls to plaintiff's counsel's office regarding the whereabouts of plaintiff's expert, time spent by a legal assistant going to the office of plaintiff's expert to pick up materials which the expert failed to bring to his deposition; and time spent preparing the affidavit for fees and the present reply brief in support of fees.

(Defendants' Reply Brief In Support Of Their Request For Attorneys' Fees, ¶ 3.)[1] Under this Court's November 1 order, of course, defendants would have been justified in including the time expended for these services in their request for fees.

They did not. Accordingly, this Court orders plaintiff's counsel personally to pay the sum of $825.00 as a sanction pursuant to this Court's November 1 order. Plaintiff is also ordered to send a copy of this Memorandum Opinion and Order to his client, Gregory Wooten.

Yet remaining for this Court's consideration are defendants' motion for summary judgment and defendants' motion to strike the affidavit and report of plaintiff's expert filed on December 5, 1985. The grounds for these motions are set forth below.

## FACTS[2]

Plaintiff Gregory Wooten is administrator of the estate of Lester Lee Wooten ("the decedent"), his deceased father. Plaintiff alleges that Lester Lee Wooten's ingestion of a prescription drug manufactured by defendants Johnson & Johnson, Inc. and McNeilab, Inc. ("McNeil"), Zomax, resulted in an allergic reaction which in turn proximately caused his death on February 20, 1983. Plaintiff's amended complaint[3] is based on a theory of strict liabili-

1. This order was entered reluctantly and only after this Court was informed that not only did plaintiff fail to produce his expert as ordered but also that plaintiff's counsel apparently had not informed his client, Mr. Wooten, of the status of the case and of the Court's sanction and discovery order. Indeed, this Court had already granted on October 28, 1985, defendants' motion to bar the testimony of plaintiff's expert witness, because of his counsel's flagrant disregard of this Court's orders. In an abundance of caution, however, and because of a genuine concern that plaintiff's case be decided on the merits and not because of his counsel's conduct, this Court vacated the order barring his expert's testimony on the condition that his expert be deposed by November 8, 1985. That deposition subsequently took place.

2. Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985) (quoting Fed.R.Civ.P. 56(c)); *see also Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). "The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact." *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). Thus, "in determining whether factu-

al issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." *Black,* 778 F.2d at 1281 (quoting *Collins v. American Optometric Association,* 693 F.2d 636, 639 (7th Cir.1982); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered...." *Big O,* 741 F.2d at 163. "[E]ven though there may be no dispute about the basic facts, still summary judgment will be inappropriate, if the parties disagree on the inferences which may reasonably be drawn from the undisputed facts." *Central National Life Insurance v. F & D Co. of Maryland,* 626 F.2d 537, 539 (7th Cir.1980). "[T]he responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits." *American International Group, Inc. v. London American International Corporation Ltd.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975)).

3. On August 22, 1985, plaintiff moved for leave to file an amended complaint to "clarify the allegation that defendants' warning to the medical profession were inadequate." Although this Court agrees with defendants that the amended

ty. Plaintiff alleges that Zomax "contained no warning as to the possible side effects as to allergic reactions.

On February 16, 1983, the decedent visited the Veterans Administration Outpatient Clinic in Las Vegas, Nevada. He complained of severe pain over his left eye and deteriorating vision. Dr. Thomas Gates, a staff physician, examined the decedent and diagnosed sinusitis, rhinitis, and mild to moderate hypertension. He then referred the decedent to an ophthalmologist, asked that his blood pressure be checked, and prescribed various medications which included: penicillin and vitamin C to fight infection; Actifed tablets and Afrin nasal spray to relieve nasal congestion; and Tylenol and Zomax for pain. Dr. Gates told the decedent to return to the clinic in one week.

On the evening of February 16, the decedent took each of the medications as instructed. The following morning, the decedent informed his wife that he had again taken his medications. The decedent collapsed in bed shortly thereafter while talking with his wife. The decedent was taken to the hospital.

At the hospital, Dr. Arshad Iqbal treated the decedent. He found him to be totally unresponsive and concluded that he was clinically dead. Dr. Kazem Fathie, a neurosurgeon, examined the decedent and confirmed that he was clinically dead. He was then removed from all life-support equipment and died on February 20.

Dr. Jean McCusker, a pathologist, performed an autopsy on the decedent in the presence of Dr. Iqbal. The autopsy indicated that the decedent died of a ruptured berry aneurysm in an artery inside the cranial cavity.[4]

McNeil has moved for summary judgment pursuant to Fed.R.Civ.P. 56(b), contending that the undisputed material facts entitle defendants to judgment as a matter of law on two separate grounds. First, McNeil contends that Zomax was not the cause in fact of decedent's death. Second, McNeil asserts that even if decedent's death was caused by an allergic reaction to Zomax, McNeil nevertheless fully discharged its legal obligation to decedent by adequately warning his prescribing physician of the relevant risks associated with the drug which were reasonably known at the time by McNeil.

## DISCUSSION

■ McNeil's motion for summary judgment is grounded on the deposition testimony of three physicians. Dr. Thomas Gates was the physician who prescribed Zomax to the decedent. He testified that, on the basis of his training, experience, and through various sources, he had all of the data necessary to make an informed decision as to whether Zomax was an appropriate medication. He testified that through the "package inserts" included with Zomax and his reading in the area he understood the relevant risks of each of the medications he prescribed to the decedent and that he had the information necessary to arrive at an appropriate judgment to prescribe each of the medications. The "package inserts" for Zomax specifically warns of the risk of allergic (i.e., anaphylactoid) reactions, as did the 1982 Physician's Desk Reference, the standard pharmacological refererence book on prescription drugs used by the medical profession when prescribing medications.

Plaintiff acknowledges that Dr. Gates "had the necessary information from the package insert, his knowledge, his training, his experience and his reading, to judge whether or not to prescribe the drug." (Plaintiff's Brief at 8, n *.) Plaintiff con-

---

complaint adds little, if anything, to the original complaint, leave to file the amended complaint was granted on September 11, 1985 because defendants will suffer no prejudice as a result of that filing and because leave to file "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a).

4. Both Dr. McCusker and Dr. Iqbal concluded that the decedent's aneurysm had been present for years prior to its rupture. Neither Dr. McCusker nor Dr. Iqbal found any evidence that the decedent suffered any kind of reaction to any of the drugs that Dr. Gates had prescribed, including Zomax.

tends, however, that Dr. Gates "is neither a neurosurgeon nor a drug epidemiologist" and that his deposition testimony "is directly contrary to the affidavit of Dr. Lerner [plaintiff's expert]." *Id.* Plaintiff notes "the unlikelihood of a physician, in effect, admitting his failure to remain informed of current medical and scientific developments where such an admission may be tantamount to an admission of malpractice," citing *Seley v. G.D. Searle & Co., et. al.,* 67 Ohio St.2d 192, 423 N.E.2d 831, 839 n. 5 (1981). Thus, plaintiff concludes, the direct contradictions between Dr. Lerner's affidavit and Dr. Gates deposition testimony demonstrate that a material issue of fact exists as to the adequacy of McNeil's warnings for Zomax.

This Court disagrees. It makes no difference that Dr. Gates is neither a neurosurgeon nor a drug epidemiologist. The only relevant issue is whether the prescribing physician was aware of the risks. Dr. Gates testified that he was, and plaintiff has produced no concrete evidence to contradict that testimony.[5]

Courts have held consistently that a drug manufacturer is entitled to summary judgment where the prescribing physician is aware of the risks associated with a drug. In *Goodson v. Searle Laboratories,* 471 F.Supp. 546 (N.D.Conn.1978), plaintiff sued the manufacturer of an oral contraceptive for allegedly failing to provide adequate warnings concerning the risk of cerebral thrombosis. The manufacturer submitted excerpts from the Physician's Desk Reference and an affidavit of the prescribing physician stating that he was aware of the risk of cerebral thrombosis from a number of sources, including the Physician's Desk Reference, in support of its motion for summary judgment. The court granted the motion, stating:

> [T]here is no issue of material fact that the defendant warned the medical profession and the prescribing doctor prior to the plaintiff's use of the risk of cerebral thrombosis associated with the use of [the drug]. Even were the warning found to be inadequate as to the medical profession as a whole, it is clear that the physician who prescribed [the drug] for the plaintiff had been adequately warned of the increased risk of thromboembolic disease associated with its use.

*Id.* at 548. Similarly, in *Cobb v. Syntax Laboratories,* 444 So.2d 203 (La.App.1983), the court affirmed the lower court's entry of summary judgment in favor of a prescription drug manufacturer. Plaintiff alleged that the manufacturer failed to provide adequate warnings of adverse side effects. The court noted:

> The plaintiff's prescribing doctors admitted receiving warning of the use of this drug. The moving party in this case attached copies of the materials supplied to pharmacists and similar material included in the patient's package. The Physician's Desk Reference contained the same information supplied by the manufacturer.... Both of plaintiff's physicians stated in their affidavits that they received and reviewed the material supplied by the manufacturer and that they considered these warnings ade-

---

5. Aside from the problems with Dr. Lerner's affidavit set forth more fully below, Dr. Lerner's affidavit states only in the most conclusory fashion the following:

> The package insert for Zomax in February of 1983 was inadequate, because it failed to specifically alert physicians to the fact that an adverse reaction potentially could be fatal, and because it also failed to specifically warn physicians that there was a potential sensitization problem with Zomax in that a patient who did not suffer an adverse reaction during his first exposure to Zomax could suffer a severe anaphylactic reaction upon subsequent exposure to said drug.

(Lerner Affidavit, ¶ 4.) Of course, potential sensitization problems leading to a severe anaphylactic reaction and even death are possible adverse consequences of ingesting virtually any drug. Dr. Lerner has set forth no specific jeopardizing factors for Zomax. A party opposing a motion for summary judgment has the burden of identifying specific facts to demonstrate a genuine issue of material fact. *See, e.g., Hall v. Printing and Graphic Arts Union,* 696 F.2d 494 (7th Cir.1982); *Weit v. Continental Illinois National Bank and Trust Co.,* 641 F.d 457 (7th Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982). Mere conclusory assertions do not suffice.

quate.... The record supports the trial court's opinion that the physicians were adequately informed by the manufacturer and that the manufacturer breached no duty in this respect.

444 So.2d at 205–06.

Each of the cases cited by plaintiff for the proposition that the adequacy of a manufacturer's warnings is a fact issue to be resolved by a jury is distinguishable. In *Reeder v. Hammond*, 125 Mich.App. 223, 336 N.W.2d 3 (1983), the court reversed the trial court's entry of summary judgment in favor of a drug manufacturer on the issue of the adequacy of the manufacturer's warnings. The prescribing physician in *Reeder*, however, testified that he did not recall having read the relevant package insert and that if he had read the insert and if the insert had contained the warnings which plaintiff contended were necessary, he would not have prescribed the drug. 336 N.W.2d at 6. Here, Dr. Gates testified that he read the package insert for each of the drugs which he prescribed to the decedent and that he possessed information sufficient to determine whether to prescribe them from a variety of sources, only one of which was the package insert. In *Dalke v. Upjohn Co.*, 555 F.2d 245 (9th Cir.1977), the court reversed the trial court's summary judgment on behalf of a manufacturer of a prescription antibiotic. In opposing the motion for summary judgment, plaintiff submitted an affidavit of the prescribing physician who stated that if the manufacturer's warnings had been as strong as plaintiff thought necessary, he probably would have prescribed another drug. *Id.* at 248. Plaintiff has submitted no such affidavit in the present case. In *Michael v. Warner/Chilcott*, 91 N.M. 651, 579 P.2d 183 (N.M.Ct.App.1978), the appellate court affirmed the trial court's denial of a drug manufacturer's motion for summary judgment on the issue of the adequacy of the warnings. The drug involved in *Michael*, however, was an over-the-counter drug and the issue was whether the warnings which accompanied the drug adequately warned the plaintiff, a consumer and not a physi-cian, who contended that the warnings were inadequate.

Accordingly, defendants' motion for summary judgment is granted because, as a matter of law, defendants fulfilled their obligation to adequately warn decedent's prescribing physician of the risks associated with Zomax.

■ Alternatively, defendants' motion for summary judgment must also be granted because plaintiff has failed to meet his burden of demonstrating that a genuine issue of material fact exists as to the cause of decedent's death. In support of the motion for summary judgment, defendants produced the deposition testimony of two physicians: Dr. Jean McCusker, the pathologist who conducted an autopsy on the decedent; and Dr. Arshad Iqbal, the neurologist who was the decedent's principal attending physician during his hospitalization and who was present at his autopsy. They testified that the autopsy revealed no evidence that the decedent suffered any kind of allergic reaction to any of the medications which he took shortly before his death. To create an issue of fact, plaintiff submitted an affidavit and report of his expert, Dr. Bernard Lerner, stating that decedent's death was caused by an allergic reaction to Zomax.

As noted above, Dr. Lerner's affidavit is replete with conclusory assertions unsupported by any specific facts and does not suffice to successfully oppose a motion for summary judgment. His report is no better. Most importantly, Dr. Lerner subsequently admitted toward the conclusion of his deposition that, notwithstanding his affidavit and report, he in fact has no opinion as to the cause of the decedent's death and that he could not reach an opinion unless he first reviewed the reports of a neuropathologist and an immunologist. Plaintiff's only response to defendants' motion to strike Dr. Lerner's affidavit and report is, in essence, that Dr. Lerner's deposition testimony at the beginning of his deposition is consistent with his affidavit. That response merely serves to emphasize the problem. It is for the court to determine in

the first instance whether an expert is qualified to give an expert opinion. Fed.R. Evid. 702. The very fact that Dr. Lerner's testimony is internally inconsistent—and the fact that he concludes that before he can render a final qualified opinion as to the cause of decedent's death, he must review the reports of other experts—lead inescapably to the conclusion that he is not qualified as an expert in that his testimony can not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Indeed he has no opinion, as plaintiff's counsel admitted during a hearing before this Court on November 3, 1985:

> COUNSEL FOR DEFENDANTS: ... I anticipate that a couple of motions will be filed. We will be filing—
>
> THE COURT: All right.
>
> COUNSEL FOR DEFENDANTS: —a motion to strike the doctor's affidavit in opposition to our motion for summary judgment on the basis that the doctor has now testified that he really has no opinion on this case, that he can't have an opinion until he sees the medical records reviewed by the [neuro]pathologist and immunologist. I think plaintiff's counsel would agree with me that that is a fair characterization of Dr. Lerner's testimony.
>
> COUNSEL FOR PLAINTIFF: I would have to agree with that.

(Transcript, Nov. 8, 1985 at 2–3.)

Accordingly, defendants' motion for summary judgment is granted because plaintiff has not established that defendants' prescription drug Zomax proximately caused the decedents' death.

## CONCLUSION

Defendants' motion for summary judgment is granted, and judgment is hereby entered in favor of defendants dismissing the case with prejudice. Plaintiff's counsel is ordered personally to pay defendants the sum of $825.00 as a sanction pursuant to this Court's order of November 1, 1985 and to send a copy of this Memorandum Opin-

ion and Order to his client, Gregory Wooten forthwith. It is so ordered.