513 So.2d 1319 (1987)
Yolanda FELIX, As Personal Representative of the Estate of Kevin Felix-Baptiste, Appellant,
v.
HOFFMANN-LaROCHE, INC., ET AL., aPPELLEES.
No. 86-1844.
District Court of Appeal of Florida, Third District.
September 29, 1987.
Rehearing Denied November 17, 1987.
*1320 Jeffrey P. Kaiser, Hialeah, for appellant.
Smathers & Thompson and Mercer L. Clarke, Miami, for appellees.
Before HENDRY, NESBITT and FERGUSON, JJ.
PER CURIAM.
We affirm the trial court's final summary judgment, entered in favor of Hoffmann-LaRoche, Inc., Roche Biomedical Laboratories, Lester M. Wachman, Bindley Western Industries, Inc., Gray Drug Stores, Inc. of Miami, Gray Drug Stores, Inc., and Sherwin Williams Company, for two reasons. First, a drug manufacturer owes a duty to warn prescribing physicians of the dangerous side effects of its prescription drugs. See Macmurdo v. Upjohn Co., 444 So.2d 449 (Fla. 4th DCA 1983); Buckner v. Allergan Pharmaceuticals, Inc., 400 So.2d 820 (Fla. 5th DCA), review denied, 407 So.2d 1102 (Fla. 1981); see also Ricci v. Parke-Davis & Co., 491 So.2d 1182 (Fla. 4th DCA), review denied, 501 So.2d 1283 (Fla. 1986). If the warning given to the medical community is sufficient, then the drug manufacturer is not liable for injuries sustained by the physician's patients as a result of the side effects of the drugs. The warning given was adequate as a matter of law. It is inconceivable that reasonable persons could disagree as to the adequacy of the warnings in conveying to physicians that the prescription drug, Accutane, is dangerous to pregnant women and should not have been prescribed. See Goodson v. Searle Laboratories, 471 F. Supp. 546 (D.Conn. 1978); Dunkin v. Syntex Laboratories, Inc., 443 F. Supp. 121 (W.D.Tenn. 1977); Brick v. Barnes-Hines Pharmaceutical Co., 428 F. Supp. 496 (D.D.C. 1977); Wolfgruber v. Upjohn, 72 A.D.2d 59, 423 N.Y.S.2d 95 (N.Y. App. Div. 1979), aff'd, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980); see also Upjohn Co., 444 So.2d at 452 (Hersey, J., dissenting). Besides using the term "teratogenicity,"[1] the package insert accompanying the drug also warned:
Women of child-bearing potential should not be given Accutane unless an effective form of contraception is used, and they should be fully counseled on the potential risk to the fetus should they become pregnant while undergoing treatment. Should pregnancy occur during treatment, the physician and patient should discuss the desirability of continuing the pregnancy period.
*1321 It is also uncontested that the Physician's Desk Reference gave a similar warning.
Second, even if we accept that a factual issue remains concerning whether the manufacturer breached a duty it owed by failing to provide an adequate warning, such a breach cannot be the proximate cause of Felix's damages. The prescribing physician testified not only that he understood the warnings but that he had prior knowledge of the teratogenic propensities of Accutane from independent research and reading, and from seminars he had attended. It is unclear from the record whether Yolanda Felix was pregnant when Dr. Greenwald prescribed the drug and it is disputed whether he warned her of the risks involved, but what is clear is that at the time he prescribed Accutane, he was aware of the dangers it posed to pregnant women. Consequently, the undisputed evidence demonstrates that any inadequacy in the warning provided was not the proximate cause of Felix's damages and that the defendants were, therefore, entitled to judgment as a matter of law. See Goodson, 471 F. Supp. at 548; Dunkin, 443 F. Supp. at 124.
While we recognize that whether a warning is adequate is usually a jury question, e.g., Ricci, 491 So.2d at 1182; Macmurdo, 444 So.2d at 451, summary judgment is proper where, as here, the warning is clear and unambiguous, the injuries arising as a result of the failure to heed the warning are identical to those the warning described, and the undisputed evidence demonstrates that at the time the prescribing physician prescribed the drug, he was completely aware of the dangers it posed. See Goodson, 471 F. Supp. at 546; Dunkin, 443 F. Supp. at 121. Accordingly, the trial court's final summary judgment is affirmed.
NOTES
[1] Dr. Greenwald, the prescribing physician in this case, defined "teratogenicity" as "the ability of something to turn out a teratogen ..." and the term "teratogen" as "a mutant, deformed, something  a deformed part, a deformed being, a deformed person, a monster, if you will, something very abnormal."