We review Upjohn Co. v. MacMurdo, 536 So.2d 337 (Fla. 4th DCA 1988), based on conflict with this Court's recent decision inFelix v. Hoffmann-LaRoche, Inc., 540 So.2d 102 (Fla. 1989). Jurisdiction is provided by article V, section 3(b)(3), of the Florida Constitution.
MacMurdo brought suit against Upjohn contending that an injection of its drug, Depo-Provera, for contraceptive purposes caused her to experience excessive and continuous menstrual bleeding which ultimately necessitated a hysterectomy to stop the bleeding. The trial judge entered summary judgment for Upjohn. The district court of appeal reversed on the ground that there were genuine issues of material fact with respect to the adequacy and sufficiency of the warning given by Upjohn to the medical community concerning the dangerous side effects of the drug when used as a contraceptive. The court held that it was error for the trial judge to determine the adequacy of the warnings as a matter of law, stating, "[i]t is not for judges but it is for the jury to determine if a particular warning is adequate under the circumstances." MacMurdo v. Upjohn Co., 444 So.2d 449, 450-51 (Fla. 4th DCA 1983) (footnote omitted) (Upjohn I).[1]
Upon remand, the case was submitted to the jury on two theories of liability. The jury found that Upjohn was not negligent in marketing the drug but concluded that the company had negligently failed to adequately warn of the potential consequences of the use of the drug. The jury returned a verdict assessing damages at $370,000 but found MacMurdo forty-nine percent comparatively negligent. Both parties appealed the judgment entered upon the verdict.
The district court of appeal rejected Upjohn's contention that, because there was no conflicting testimony on the issue, the evidence was insufficient to support a verdict. Upjohn Co. v.MacMurdo, 536 So.2d 337 (Fla. 4th DCA 1988) (Upjohn II). The court held that it was bound by its previous opinion that the adequacy of drug warnings is always a jury question. The court went on to observe that even if not bound by its previous opinion there was sufficient evidence in the record to support the conclusion that Upjohn's warnings were insufficient to alert her physician to the risk of MacMurdo's bleeding problem. On cross-appeal the court held that MacMurdo should have been granted a directed verdict on the issue of comparative negligence. Therefore, the court affirmed the judgment on liability but reversed on the issue of comparative negligence with directions that a judgment be entered for MacMurdo in the full amount of her damages. Id.
Subsequent to the filing of Upjohn II, this Court considered the proposition of whether the adequacy of a drug warning is invariably a jury question. Felix v. Hoffmann-LaRoche, Inc.,540 So.2d 102 (Fla. 1989). Our conclusion was stated as follows:
 While in many instances the adequacy of warnings concerning drugs is a question of fact, we hold that it can become a *Page 682 
question of law where the warning is accurate, clear, and unambiguous.
Id. at 105. As part of our holding, we disapproved Upjohn I to the extent that it held that the adequacy of drug warnings must always be submitted to the jury. Id. at 105. Thus, it follows that we now disapprove the statements in Upjohn II in which the district court of appeal adopted that portion of its earlier opinion which was rejected in Felix. There remains the question of whether there was sufficient evidence of the inadequacy of the drug warnings to submit this case to the jury.
MacMurdo received two injections of Depo-Provera. The first was prescribed by Dr. Levy, a New Orleans gynecologist, in May of 1974, for the purpose of contraception because other forms of contraception had resulted in abnormal bleeding. Thereafter, MacMurdo had no menstrual period for approximately ninety days. In August of 1974, she consulted Dr. Shapiro of Miami requesting an abortion, only to discover that she was not pregnant. Dr. Shapiro believed that the Depo-Provera had caused the absence of menstruation because the use of the drug often causes this side effect. Dr. Shapiro prescribed a second Depo-Provera injection for contraceptive purposes. After the second injection, MacMurdo experienced continuous bleeding for three months. She returned to Dr. Levy who, at her request, performed a hysterectomy. For purposes of our review it must be assumed that MacMurdo's bleeding condition was caused by the Depo-Provera because there was medical evidence to support that conclusion introduced at the trial.
The package insert which accompanied the drug stated in pertinent part:
 DESCRIPTION
 Medroxyprogesterone acetate, U.S.P. is a derivative of progesterone and is active by the parenteral and oral routes of administration. . . .
 ACTIONS
 Depo-Provera (medroxyprogesterone acetate) administered parenterally in the recommended doses to women with adequate endogenous estrogen transforms proliferative endometrium into secretory endometrium. . . .
 Because of its prolonged action and the resulting difficulty in predicting the time of withdrawal bleeding following injection, Depo-Provera is not recommended in secondary amenorrhea or dysfunctional uterine bleeding. . . .
 INDICATIONS
 Adjunctive therapy and palliative treatment of inoperable, recurrent, and metastasis endometrial carcinoma.
 CONTRAINDICATIONS
 . . . .
 4. Undiagnosed vaginal bleeding. . . .
 . . . .
 WARNINGS
 . . . .
 3. The use of Depo-Provera (medroxyprogesterone acetate) for contraception is investigational since there are unresolved questions relating to its safety for this indication. Therefore, this is not an approved indication for this use. . . .
 PRECAUTIONS
 . . . .
 3. In cases of breakthrough bleeding, as in all cases of irregular bleeding per vaginum, nonfunctional causes should be borne in mind. In cases of undiagnosed vaginal bleeding, adequate diagnostic measures are indicated. . . .
 . . . .
 ADVERSE REACTIONS
 . . . The following adverse reactions have been associated with the use of Depo-Provera (medroxyprogesterone acetate). Miscellaneous — Rare cases of headache and hyperpyrexia have been reported. The following adverse reactions have been observed in women taking progestin including Depo-Provera:
 breakthrough bleeding spotting change in menstrual flow. . . .
Much of the argument before us is directed to the proposition that because the physicians were warned that the use of the drug for contraception had not been approved, Upjohn cannot be held liable. *Page 683 
However, there was medical testimony that in appropriate circumstances a physician may properly prescribe a drug for a purpose other than that for which it has been approved. Therefore, we believe the more crucial question is whether the warnings were adequate to warn a physician of the possibility that Depo-Provera might be causing the condition experienced by MacMurdo. In this respect, it must be noted that the insert explicitly states that breakthrough bleeding, spotting, and change in menstrual flow are adverse reactions which have been observed in women taking Depo-Provera.
The manufacturer's duty to warn of the drug's dangerous side effects is directed to the physician rather than the patient.Felix v. Hoffmann-LaRoche, Inc., 540 So.2d at 104. Therefore, the adequacy or inadequacy of the warning to inform a physician must, except in the more obvious situations, be proved by expert testimony. Wyeth Laboratories, Inc. v. Fortenberry, 530 So.2d 688, 692 (Miss. 1988); Hill v. Squibb Sons, E.R., 181 Mont. 199, 592 P.2d 1383 (1979); Dion v. Graduate Hosp. of Univ. ofPa., 360 Pa. Super. 416, 520 A.2d 876, 880 (1987).
In this case, no medical expert testified that the package insert was insufficient to put a doctor on notice that the symptoms displayed by MacMurdo in January of 1975 could result from the use of Depo-Provera.[2] The closest anyone came to this conclusion was when Dr. Levy, himself, said that MacMurdo was suffering from dysfunctional bleeding, which he characterized as anything other than normal bleeding, while the insert only referred to breakthrough bleeding and change in the menstrual flow. However, Dr. Levy admitted that if he had had the insert in front of him when MacMurdo was describing her bleeding, he might have concluded that the drug was causing her problem. According to the medical evidence, breakthrough bleeding is bleeding outside the normal menstrual period, and changes in menstrual flow refers to changes from the norm.[3] The fact remains that the insert warned of the possibility of abnormal bleeding outside of the menstrual period. It would be unreasonable to hold Upjohn liable for not characterizing the bleeding as excessive, continuous, or prolonged.[4] The evidence was insufficient to present a jury question on the inadequacy of the package insert to warn of the potential consequences of the use of the drug.
We disapprove the opinion in Upjohn II and remand with directions to enter a judgment for Upjohn.
It is so ordered.
EHRLICH, C.J., and OVERTON and McDONALD, JJ., concur.
SHAW, J., dissents with an opinion, in which KOGAN, J., concurs.
KOGAN, J., dissents with an opinion.
BARKETT, J., recused.
[1] The district court of appeal rendered an earlier opinion in this case. MacMurdo v. Upjohn Co., 388 So.2d 1103 (Fla. 4th DCA 1980). Because of that opinion's lack of relevance to the issue before us, it has not been assigned a numerical suffix.
[2] A doctor called by Upjohn testified that the insert was adequate to warn physicians of all adverse bleeding reactions from the use of the drug.
[3] We do not believe that the testimony of Dr. Benjamin, Ph.D., a pharmacologist who endeavored to testify what these terms meant to physicians, can be considered probative on this issue.
[4] We reject MacMurdo's contention that Upjohn should have been more specific in its description of adverse reactions in view of a study it had previously conducted concerning the desirability of Depo-Provera for use as a contraceptive. While the results of the study indicated that some of the women who took the drug experienced prolonged bleeding, the bleeding was said to be unpredictable and more often spotty or light. The study further noted that the abnormal bleeding often decreased as usage continued.