NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4028
_____

GLEN BOOTAY,
                          Appellant

v.

KBR, INC; KELLOGG BROWN & ROOT SERVICES, INC.; KBR TECHNICAL
SERVICES, INC.; OVERSEAS ADMINISTRATION SERVICES, LTD;
SERVICE EMPLOYEES INTERNATIONAL, INC.

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-09-CV-1241)
District Judge: Honorable Terrence F. McVerry

_____

Argued May 10, 2011
_____

Before: SMITH, CHAGARES AND VANASKIE, *Circuit Judges*

(Opinion Filed:  July 13, 2011)
_____

Fred C. Jug, Jr., Esq. (*Argued*)
Brandt, Milnes & Rea
310 Grant Street
1109 Grant Building
Pittsburgh, PA 15219-0000

*Counsel for Appellant Glen Bootay*

Raymond B. Biagini, Esq.
Kurt J. Hamrock, Esq. (*Argued*)
McKenna, Long & Aldridge
1900 K Street, N.W.
Washington, DC 20006-0000

Kari Horner, Esq.
Joseph L. Luciana, III, Esq.
Dingess, Foster, Luciana, Davidson & Chleboski
20 Stanwix Street
PNC Center, Third Floor
Pittsburgh, PA 15222-0000

*Counsel for Appellees KBR, INC.*
*KELLOGG BROWN & ROOT SERVICES, INC., KBR TECHNICAL SERVICES, INC.,*
*OVERSEAS ADMINISTRATION SERVICES, LTD, and SERVICE EMPLOYEES*
*INTERNATIONAL, INC.*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

Glen Bootay appeals the District Court's dismissal of his amended complaint, which alleged liability of several private companies for personal injuries sustained as the purported result of exposure to sodium dichromate over a four-day period while he was deployed in Iraq as a member of the United States Army. The District Court found that three of the named defendants – Appellees KBR, Inc. ("KBRI"); Overseas Administration Services, Ltd. ("Overseas"); and Service Employees International, Inc. ("SEII") (collectively, "Jurisdictional Appellees") – lacked sufficient contacts with Pennsylvania to enable Bootay to sue them in that State. As to the remaining defendants

2

– Appellees Kellogg Brown & Root Services, Inc. ("KBR Services") and KBR Technical Services, Inc. ("KBR Technical") – the District Court concluded that Bootay could not show that they owed a duty to warn him of the hazards of sodium dichromate exposure under either a negligence or contractual third-party beneficiary theory, and that Bootay could not otherwise allege a viable basis for recovery against them. For the reasons that follow, we will affirm the District Court's thoughtful and comprehensive decisions.

I.

As we write solely for the parties, who are familiar with the facts and procedural history of this matter, we set forth only those facts necessary for our analysis.

In March, 2003, prior to the invasion of Iraq by coalition forces, the United States Army Corps of Engineers ("USACE") issued a contract to KBR Services and KBR Technical (collectively, "KBR") to restore Iraqi oil operations as soon as practicable. The contract called for KBR to undertake its work at an Iraqi oil infrastructure facility after being notified by the military that "benign conditions" existed. The contract stipulated that a facility would be considered benign once it had been cleared of enemy forces, environmental hazards, mines, and other threatening conditions.

Bootay, a Sergeant in the United States Army, was deployed to Iraq as part of Operation Iraqi Freedom. In April, 2003, after assisting in securing the Baghdad Airport, Bootay was sent to the Qarmat Ali Water Treatment Plant ("Qarmat Ali"). While at Qarmat Ali for a period of four days, Bootay observed an orange powder throughout the facility. He later believed that the orange powder was sodium dichromate.

Iraqi workers, prior to the commencement of Operation Iraqi Freedom, routinely used sodium dichromate as part of the water treatment process at Qarmat Ali. This facility supplied water to support oil extraction. Accordingly, refurbishment of Qarmat Ali became part of KBR's contractual obligation.

Bootay, a valiant veteran of Operation Iraqi Freedom, now finds himself totally disabled as a result of a series of calamitous health setbacks he began experiencing several years after his September, 2003 honorable discharge from the Army. Bootay attributes his disabling ailments to his exposure to sodium dichromate at Qarmat Ali. He seeks to hold KBR and the Jurisdictional Appellees liable for having failed to warn him of the consequences of exposure to sodium dichromate.

Bootay commenced this action on September 11, 2009. On March 26, 2010, the District Court issued a Memorandum Opinion granting the Jurisdictional Appellees' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and granted KBR's Rule 12(b)(6) motion on the ground that this action was time-barred. In according Bootay leave to file an amended complaint, the District Court cautioned:

> Although the Complaint in this case is being dismissed on statute of limitations and personal jurisdiction grounds, Defendants have raised additional legal challenges, some of which appear to have merit. If Bootay chooses to file an amended complaint, it will be important to address these alleged shortcomings as well, to assure that the amended complaint contains sufficient factual allegations to render the claim(s) "plausible" in compliance with the pleading standard set forth in *Twombly* and *Phillips*.

(A. 113) (footnote omitted).

4

On April 9, 2010, Bootay filed his amended complaint. On May 3, 2010, the Jurisdictional Appellees filed a renewed 12(b)(2) motion to dismiss for lack of personal jurisdiction, and KBR filed a renewed motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On May 19, 2010, Bootay filed a motion for an extension of time and a motion for jurisdictional discovery. On May 21, 2010, the District Court granted Bootay a fourteen-day extension of time to respond to the motion, but denied the request for jurisdictional discovery.

On July 20, 2010, the District Court held oral argument on the motions to dismiss. Both parties were permitted to file supplemental briefs and exhibits. As part of his supplemental filings, Bootay submitted a brief filed on behalf of other plaintiffs in a case captioned *McManaway v. KBR, Inc.*, Civ. Action No. 4:10-CV-1044 (S.D. Tex.) ("*McManaway* Brief").

On September 9, 2010, the District Court issued a Memorandum Opinion, again granting the Jurisdictional Appellees' motion to dismiss because Bootay could not show that they were alter egos of KBR, over which the District Court had personal jurisdiction. Although denying KBR's Rule 12(b)(6) motion to dismiss on the statute of limitations defense, the District Court granted KBR's motion to dismiss insofar as it challenged the viability of Bootay's claim. Finding that it would be futile to grant Bootay leave to file a second amended complaint, the District Court dismissed the amended complaint with prejudice.

On September 17, 2010, Bootay filed a motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. On September 30, 2010, he also filed

5

a motion for leave to file a second amended complaint. On October 8, 2010, the District Court denied both motions. This timely appeal followed.[1]

## II.

We exercise plenary review over a district court's decision concerning personal jurisdiction. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Marten v. Godwin*, 499 F.3d 290, 295 n.2 (3d Cir. 2007). "[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Bootay, however, as the plaintiff, "bears the burden of proving that personal jurisdiction is proper." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998); *Carteret Sav. Bank, F.A.*, 954 F.2d at 146 ("[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction.").

Bootay asserts that jurisdiction is proper over the Jurisdictional Appellees because, at all times relevant to this litigation, they functioned as alter egos of the parent holding company, KBRI. Specifically, Bootay argues that the activities of KBR Services, over which the District Court had personal jurisdiction, "should be imputed to the parent corporation[, KBRI]." (Appellant's Br. at 16.)

---

[1] The District Court had jurisdiction over this diversity matter pursuant to 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

6

"[T]he requirements for corporate veil piercing . . . although rather imprecise in their various formulations, are demanding ones." *Am. Bell Inc. v. Fed'n of Tel. Workers of Pa.*, 736 F.2d 879, 886 (3d Cir. 1984). As the District Court explained, Bootay has not alleged facts sufficient to support a determination that the various corporations named as defendants in this litigation ignore corporate formalities. That Overseas and SEII recruited workers in Pennsylvania to perform work for KBR Services in Iraq does not suffice to show that the contacts of KBR Services with Pennsylvania should be attributed to these entities. Nor does the fact that KBRI is the parent of KBR Services and KBR Technical provide a basis for finding that the corporate veil should be pierced and all Appellees regarded as a single entity for jurisdictional purposes.[2] Accordingly, the District Court properly granted the Jurisdictional Appellees' motion to dismiss for lack of personal jurisdiction.

### III.

Our review of the District Court's dismissal of the amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is plenary. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992). To survive a motion to dismiss, Bootay's amended complaint must set forth "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] Bootay relies on *Arch v. American Tobacco Co.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997), to support his position. That case, however, actually held that the contacts of the subsidiary could not be properly imputed to the parent in order to establish personal jurisdiction over the parent. *Id.*

Bootay asserts liability theories of negligence, breach of contract, fraudulent

misrepresentation, and intentional infliction of emotional distress. Each liability theory

will be assessed in turn.

A.

In Pennsylvania,[3] the elements of a cause of action sounding in negligence are:

> (1) a duty or obligation recognized by the law requiring the
> defendant to conform to a certain standard of conduct for the
> protection of others against unreasonable risks; (2)
> defendant's failure to conform to the standard required; (3) a
> causal connection between the conduct and the resulting
> injury; (4) actual loss or damage resulting to the plaintiff.

*R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005). The court's first task is to decide whether

the defendant owed a duty of care to the plaintiff, a question of law for the court to

decide. *Id.*

In addition to asserting that KBR owed him a duty to warn of the hazards of

sodium dichromate exposure under general negligence principles,[4] Bootay contends that

KBR's duty to warn arose out of its contract to restore Iraqi oil production. In this

regard, Bootay relies upon section 324A of the Restatement (Second) of Torts. Section

324A provides:

> One who undertakes, gratuitously or for consideration, to
> render services to another which he should recognize as

---

[3] The parties do not dispute that Pennsylvania law applies to this case. Consequently, we shall apply Pennsylvania law. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007) (noting that under *Erie* federal courts apply state law).
[4] The District Court gave a thorough explanation for why, as a matter of law, KBR did not owe Bootay a duty to warn under general negligence principles, and there is no need for us to elaborate on the District Court's comprehensive treatment of that issue.

necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, or

    (b) he has undertaken to perform a duty owed by the other to the third person, or

    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Bootay's reliance on § 324A is foreclosed by *Sheridan v. NGK Metals Corp.*, 609 F.3d 239 (3d Cir. 2010). In *Sheridan*, we held that a company hired to monitor discharges of beryllium could not be held liable under § 324A to warn nearby residents of the consequences of exposure to beryllium. As we explained in *Sheridan*, under Pennsylvania law, in order to hold a contracting party liable to a stranger to the contract for a negligent failure to warn, the contracting party "must have undertaken the responsibility of making that warning." *Id.* at 284. There is nothing in the amended complaint that would support an inference that KBR undertook such a responsibility. Accordingly, Bootay's reliance on § 324A is misplaced.[5]

B.

Bootay also contends that he is a third-party beneficiary under KBR's contract to restore Iraqi oil production. Pennsylvania has adopted § 302 of the Restatement (Second)

---

[5] Bootay's reliance on *Harris v. Kellogg, Brown & Root Services, Inc.*, 618 F. Supp. 2d 400 (W.D. Pa. 2009), in support of his negligence claim is also misplaced. That case involved KBR's performance of a contractual obligation to repair defective wiring, and the tragic consequences of its negligent performance of this contractual obligation. In this case, by way of contrast, Bootay cannot point to any contractual obligation on the part of KBR that would impose upon it a duty to warn soldiers of sodium dichromate exposure.

of Contracts.[6] *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992). Pennsylvania courts

employ:

> a two part test for determining whether one is an intended
> third party beneficiary: (1) the recognition of the
> beneficiary's right must be "appropriate to effectuate the
> intention of the parties," and (2) the performance must
> "satisfy an obligation of the promisee to pay money to the
> beneficiary" or "the circumstances indicate that the promisee
> intends to give the beneficiary the benefit of the promised
> performance."

*Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983).

The intent of the KBR contract with USACE was to restore Iraq's oil capabilities.[7]

Absent from the contract is any expression of intent to benefit individual soldiers, like

---

[6] Section 302, Intended and Incidental Beneficiaries, states:

> (1) Unless otherwise agreed between promisor and promisee,
> a beneficiary of a promise is an intended beneficiary if
> recognition of a right to performance in the beneficiary is
> appropriate to effectuate the intention of the parties and either
>     (a) the performance of the promise will satisfy an
> obligation of the promisee to pay money to the beneficiary; or
>     (b) the circumstances indicate that the promisee
> intends to give the beneficiary the benefit of the promised
> performance.
> (2) An incidental beneficiary is a beneficiary who is not an
> intended beneficiary.

[7] The specific "task order" under the contract on which Bootay places his principal reliance – Task Order 3 – states that it is "intended to support immediate actions by the US and coalition forces to respond to oil well fires and oil spills, and prevent or mitigate significant hazards or damage to oil facilities." (A. 1058) (§ 1.1.1, Purpose and Period of Performance).

Bootay.  Thus, KBR cannot be held liable on a third-party beneficiary theory.[8]  *See Hicks v. Metro. Edison Co.*, 665 A.2d 529, 535 (Pa. Commw. Ct. 1995).

C.

Bootay's Amended Complaint also includes a "fraud/deceit/fraudulent concealment" count.  (A. 170.)  He alleges that KBR knew or should have known that there was a hazardous substance at Qarmat Ali in March 2003, and that it should have disclosed that information to the military before July 2003.  As the District Court explained, however, Bootay fails to allege that KBR made any misrepresentation directly to Bootay.  *See Shapiro*, 964 F.3d at 284 (plaintiff must plead ignorance of the falsity of the misrepresentation "by the person *to whom it was made*") (emphasis added).  Bootay concedes that he did not have direct interaction or communication with KBR.  Indeed, he alleges that the fraudulent representations were made to the Army, and not directly to himself.  (*See* A. 170) (KBR "materially misrepresented" "dangers present at Qarmat Ali" "to the United States Army by denying any knowledge of site contamination until at least July 2003."); (*id.* at 171) ("KBR had reason to expect and was substantially certain that its representations would be directly and indirectly communicated to . . . Bootay.").  Bootay's amended complaint fails to allege that there were *any* communications between himself and KBR.  Further, there is no allegation that KBR even had knowledge that

---

[8] Assuming, *arguendo*, that KBR had a duty under the contract to perform an environmental assessment of Qarmat Ali, that duty extended only to USACE, as KBR's customer, and not every single soldier who visited Qarmat Ali.  *See Mackey v. Maremont Corp.*, 504 A.2d 908, 916 (Pa. Super. Ct. 1986).  Any duty to apprise USACE of sodium dichromate contamination was satisfied in July 2003, when KBR discovered and notified the military of sodium dichromate contamination at Qarmat Ali.

11

Bootay had been to Qarmat Ali.  Allegations that KBR misled the military, and in turn he was misled, are insufficient.  Accordingly, the District Court correctly held that Bootay could not present an actionable claim of fraud.

D.

Bootay argues that the District Court erroneously dismissed his claim of intentional infliction of emotional distress.  This "cause of action has three elements: the conduct must be extreme and outrageous, be intentional or reckless, and cause severe emotional distress." *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 84 (3d Cir. 1987) (internal quotation marks omitted).  The extreme and outrageous conduct must be directed at Bootay.  *See Daughen v. Fox*, 539 A.2d 858, 864 (Pa. Super. Ct. 1988).  Bootay, however, cannot allege that KBR's conduct was directed at him.  Furthermore, intentional infliction of emotional distress cannot be premised upon a failure to warn.  *See Wisniewski*, 812 F.2d at 85.

IV.

Bootay also contests the District Court's denial of his motions for reconsideration, for jurisdictional discovery, and leave to amend.  Generally, we review the District Court's denial of a motion for reconsideration for abuse of discretion.  *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999).  "However, to the extent that the denial of reconsideration is predicated on an issue of law, such an issue is reviewed de novo; to the extent that the District Court's disposition of the reconsideration motion is based upon a factual finding, it is reviewed for clear error."  *Id.*  We review the District Court's denial of the motions for jurisdictional discovery and leave to amend for abuse of

12

discretion.  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003)

(motion for jurisdictional discovery); *California Pub. Employees' Ret. System v. Chubb*

*Corp.*, 394 F.3d 126, 163 (3d Cir. 2004) (motion for leave to file second amended

complaint).

A.

The rationale for a motion for reconsideration "'is to correct manifest errors of law

or fact or to present newly discovered evidence.'"  *Max's Seafood Café*, 176 F.3d at 677

(quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).  Therefore, a

judgment may be altered or amended if Bootay "shows at least one of the following

grounds: (1) an intervening change in the controlling law; (2) the availability of new

evidence that was not available when the court granted the motion for summary

judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest

injustice."  *Id.*

In seeking reconsideration, Bootay relied upon a memorandum opinion issued by

the District Court in *Bixby v. KBR, Inc.*, No. CV 09-632, 2010 WL 3418340 (D. Or. Aug.

30, 2010) (holding: (1) political question doctrine did not deprive court of subject matter

jurisdiction; (2) KBR was not entitled to government contractor defense; and (3)

combatant activities exception to Federal Tort Claims Act did not shield KBR), *amended*

*and superseded by*, 748 F. Supp. 2d. 1224 (D. Or. 2010) (holding same),[9] as well as the

---

[9] The original memorandum opinion is no longer electronically available on
Westlaw or LexisNexis.  That memorandum opinion, however, was provided to this
Court.  (A. 697-725.)  The only discrepancy between the two versions appears to be
found prior to the conclusion, where a number of dash-marks separate "waiver of

13

*McManaway* Brief.  Significantly, the District Court in the matter sub judice was aware of the *Bixby* memorandum opinion when it granted KBR's Rule 12(b)(6) motion.  Thus, *Bixby* afforded no basis for reconsideration.  Similarly, the *McManaway* Brief was submitted to the District Court before it issued its ruling on KBR's motion.  Thus, the *McManaway* Brief was not "new" evidence.  As the District Court noted, "[n]othing about the *evidence* introduced in [*McManaway*] c[ould] remedy the shortcomings of the *pleadings* in this case."  (A. 30) (emphasis in original).  Accordingly, the District Court did not err in denying Bootay's motion for reconsideration

B.

On September 9, 2010, as well as October 8, 2010, the District Court denied Bootay's motion for leave to file a second amended complaint.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Id.*

Bootay's motion for leave to file a second amended complaint relies upon various exhibits that had been submitted in support of his reconsideration motion.  The District Court found that Bootay's motion for leave to file a second amended complaint "for a third 'bite of the apple' largely rehash[es] the arguments and evidence that ha[d] been

---

sovereign[,]" (*id.* at 725,) and "immunity." (*Id.* at 726.)  Additionally, the superseding memorandum opinion granted an immediate appeal pursuant to 28 U.S.C. § 1929(b).  On June 22, 2011, counsel for Bootay filed a letter of purported supplemental authority pursuant to Fed. R. App. P. 28(j).  The supplemental authority was the amended memorandum opinion and order reported as a published opinion.

previously presented." (A. 32-33.) Therefore, the District Court denied Bootay leave to amend.

Because we agree that Bootay cannot support a viable claim for relief under any of the liability theories he has articulated, we also agree that allowing a second amended complaint would have been futile. Accordingly, the District Court did not abuse its discretion in denying Bootay leave to file a third complaint.

C.

On May 19, 2010, Bootay filed a motion for jurisdictional discovery. Bootay, however, failed to allege with any particularity the possible existence of the requisite contacts between the Jurisdictional Appellees and Pennsylvania to warrant discovery. *See Toys "R" Us, Inc.*, 318 F.3d at 456 (jurisdictional discovery appropriate only where the plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state'") (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Accordingly, the District Court did not abuse its discretion in denying Bootay's motion for jurisdictional discovery.

V.

For the foregoing reasons, we will affirm the Judgment of the District Court.[10]

---

[10] In light of our holding, we need not address whether Bootay's claims are time-barred.

15