Kristin L. BROWN and Paul L. Brown individually, and Riley J. Brown, by and through her natural parents and guardians, Plaintiffs,

v.

JOHNSON & JOHNSON, McNeil–PPC, Inc. McNeil Consumer Products Company, McNeil Consumer Healthcare, a division of McNeil–PPC, Inc., McNeil–Consumer & Specialty Pharmaceuticals, a division of McNeil–PPC, Inc., Defendants.

Civ. No. 12–4929.

United States District Court, E.D. Pennsylvania.

Filed Dec. 9, 2014.

Brandon H. Steffey, Jensen & Associates, Fort Worth, TX, John Bradley McDermott, Laura A. Feldman, Rosemary

Pinto, Feldman & Pinto PC, Philadelphia, PA, for Plaintiffs.

David F. Abernethy, Drinker Biddle & Reath LLP, Philadelphia, PA, Kenneth P. Conour, Matthew P. Smith, Thomas W. Pulliam, Jr., Vernon I. Zvoleff, Drinker Biddle & Reath LLP, San Francisco, CA, for Defendants.

### ORDER

PAUL S. DIAMOND, District Judge.

Plaintiffs allege that Riley Brown, a three-year-old child, contracted Stevens–Johnson Syndrome and/or Toxic Epidermal Necrolysis—severe skin conditions—from her use of Children's Motrin. Plaintiffs bring claims against Defendants, the producers of Children's Motrin, for failure to warn consumers, failure to warn physicians, design defect, manufacturing defect, negligent marketing or testing, breach of warranty, fraudulent or negligent misrepresentation, punitive damages, and breach of the Pennsylvania Unfair Trade Practices and Consumer Protection law. The Parties have cross-moved for summary judgment. Defendants seek summary judgment on all Plaintiffs' claims. Plaintiffs seek partial summary judgment on all Defendants' affirmative defenses.

## I. DISCUSSION

### A. Failure to Warn Consumers

Plaintiffs argue that Defendants should have included more specific warnings on the Children's Motrin label. (Am. Compl., Doc No. 51 at ¶ 83r.) Defendants argue that because the FDA approved their labels, any state law requiring different labels is preempted by this federal action. (Doc. No. 106 at 25); *Farina v. Nokia, Inc.*, 625 F.3d 97, 122 (3d Cir.2010) ("Conflict preemption exists ... 'where it is impossible for a private party to comply with both state and federal require-

ments....'" (internal citation omitted)); *see also Wyeth v. Levine*, 555 U.S. 555, 573, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) ("Impossibility pre-emption is a demanding defense.").

Defendants have not adduced "'clear evidence that the FDA would not have approved the change' that was necessary to comply with state law." *Wolfe v. McNeil–PPC, Inc.*, 773 F.Supp.2d 561, 568 (E.D.Pa.2011) (internal citation omitted); *see also id.* ("This is an 'exacting burden' that cannot be met 'simply by showing that the FDA approved the label....'" (internal citation omitted)). Typically, a drug manufacturer may strengthen its warnings through a "Changes Being Effected" process without FDA approval. 21 C.F.R. § 314.70(c)(6)(iii)(A); *see also Levine*, 555 U.S. at 568, 129 S.Ct. 1187 (changes being effected regulation precluded conflict preemption defense). Defendants have failed to show that they could not have modified the 2005 Children's Motrin label through the Changes Being Effected process in light of evolving information about the connection between Motrin and SJS/TEN. *See, e.g., Hunt v. McNeil Consumer Healthcare*, 6 F.Supp.3d at 701–02 (FDA's response to the 2005 Citizen Petition is not "clear evidence" that the FDA would have rejected stronger warnings, including blindness warning); *Newman v. McNeil Consumer Healthcare*, No. 10–1541, 2012 WL 39793, at *7 (N.D.Ill. Jan. 9, 2012) ("[T]he FDA should not have to reject every possible formulation of a particular warning.... Here, however, the FDA's response does not even address the petitioners' references to the more serious consequences of SJS and TEN."); *see also Wolfe v. McNeil–PPC, Inc.*, 773 F.Supp.2d 561, 568–69 (E.D.Pa.2011) (no preemption for an earlier version of the Motrin label). The FDA's approval in 2013 of the same SJS/TEN warnings for acetaminophen is

not "clear evidence" strong enough to meet the "exacting burden" for this defense. *Wolfe,* 773 F.Supp.2d at 568; *Hunt,* 6 F.Supp.3d at 701–02 (rejecting acetaminophen argument). Accordingly, I will deny Defendants' Motion.

### B. Failure to Warn Physicians

Plaintiffs allege that Defendants should have warned physicians about Stevens–Johnson Syndrome and Toxic Epidermal Necrolysis. (Am. Compl., Doc No. 51 at ¶¶ 71, 83g-h, 98.) Defendants had no duty to inform physicians, however, because Children's Motrin is an over-the-counter drug. *See Soufflas v. Zimmer, Inc.,* 474 F.Supp.2d 737, 751 (E.D.Pa.2007) ("[A] manufacturer will only be held liable where it fails to exercise reasonable care to inform the one for whose use the product is supplied of the facts that make the product likely to be dangerous. In a case involving a prescription medical device, the intended user is the prescribing physician." (internal citation omitted)); *LaBarre v. Bristol–Myers Squibb Co.,* No. 06–6050, 2013 WL 144054 (D.N.J. Jan. 11, 2013) ("Pharmaceutical companies then, who must warn the ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician...." (quoting *Buckner v. Allergan Pharms.,* 400 So.2d 820, 822 (Fla.Dist.Ct. App.1981))), *aff'd,* 544 Fed.Appx. 120 (3d Cir.2013). Accordingly, I will grant Defendants' motion for summary judgment on Plaintiffs' claims for failure to warn physicians.

### C. Design Defect

Proceeding under strict liability and negligence theories, Plaintiffs allege that Children's Motrin was defectively designed. (Am. Compl., Doc. No. 51 at ¶¶ 82, 92.) Defendants argue that federal law preempts these claim and that Children's Motrin was safe according to state law. (Defs.' Mot. Summ. J. at 41–48.)

### Preemption

Defendants have not made out federal preemption. *See Wyeth v. Levine,* 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) ("[I]n all pre-emption cases, ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (internal citation and quotation marks omitted)). The Supreme Court has not addressed whether federal law can preempt state law design defect claims brought against manufacturers of brand-name or non-prescription drugs. I conclude that its preemption cases do not extend to the manufacturers of these products. *See Mut. Pharm. Co. v. Bartlett,* ⸺ U.S. ⸺, 133 S.Ct. 2466, 2475, 186 L.Ed.2d 607 (2013) (preempting claims against generic drug manufacturers because generic drugs are required to have the same design as their brand-name counterparts); *id.* at 2480 (emphasizing that the federal statute governing prescription drugs "includes neither an express pre-emption clause ... nor an express non-pre-emption clause (as in the over-the-counter drug context)"); *Hunt v. McNeil Consumer Healthcare,* 6 F.Supp.3d 694, 704 (E.D.La.2014) ("Congressional intent to preserve products liability actions against manufacturers of nonprescription drugs could not be more clear.").

Defendants have also failed to demonstrate that the FDA would have rejected a proposed change to Children's Motrin's chemical composition. (*See* Steffey Decl., Ex. 42 at 12; Ex. 10 at 109 (suggesting that the FDA's initial rejection of dexibuprofen was based on the lack of clinical trials).) In these circumstances, Defen-

dants have failed to meet their "exacting burden."

*Choice of Law*

Defendants suggest that Florida and Pennsylvania design defect laws differ: there is a presumption under Florida law—but not Pennsylvania law—that a product is safe if it complies with regulatory provisions. (Defs.' Supplemental Br., Doc. No. 127 at 6–7.) Plaintiffs correctly argue that the Florida presumption affects only the burden of production; once the opposing party produces evidence that a product is unsafe, the presumption no longer applies. (Pls.' Supplemental Br., Doc. No. 126 at 6); *Universal Ins. Co. v. Warfel,* 82 So.3d 47, 58 (Fla.2012) ("In the absence of clear statutory language to the contrary, statutory provisions are governed by section 90.303 [burdens of production]."); *Dept. of Agric. & Consumer Servs. v. Bonanno,* 568 So.2d 24, 31 (Fla. 1990) ("[A burden of production] is commonly referred to as a vanishing presumption, or a 'bursting bubble' presumption. Once evidence rebutting the presumption is introduced, the presumption disappears and the jury is not told of it."). Accordingly, there is no conflict; under both states' laws Plaintiffs must produce evidence that the product was unreasonably dangerous to avoid summary judgment, and if Plaintiffs do so then there is no presumption in Defendants' favor.

*Strict Liability Defective Design*

■ In determining whether a product is defective under a strict liability theory, courts balance several factors: (1) its utility; (2) its risks; (3) the existence of safer alternatives; (4) the manufacturer's ability to eliminate the product's unsafe character without making it prohibitively expensive; (5) the user's ability to avoid danger by exercising due care when using the product; (6) the user's anticipated awareness of dangers inherent in the product; and

(7) the manufacturer's ability to spread the loss by setting a higher price or carrying liability insurance. *Wolfe v. McNeil–PPC, Inc.,* 773 F.Supp.2d 561, 572 (E.D.Pa.2011) (internal citation omitted). Plaintiffs argue Defendants should have used a different active ingredient and propose two alternatives: acetaminophen and dexibuprofen. (Pls.' Resp., Doc. No. 115 at 65–67.)

Defendants correctly argue that acetaminophen is not an alternative to ibuprofen but an entirely different product. (Defs.' Reply, Doc. No. 122 at 22); *see Salvio v. Amgen Inc.,* No. 2:11–cv–553, 2012 WL 517446, at *7 (W.D.Pa. Feb. 15, 2012) (an alternative design could not be an entirely different product, and holding that "different drugs" are different products); *Newman by Newman v. McNeil Consumer Healthcare,* No. 10–C–1541, 2013 WL 7217197, at *11–12 (N.D.Ill. Mar. 29, 2013) (Maj. J.) (acetaminophen a reasonable alternative but only because Illinois law allowed "different products" to be reasonable alternatives). Dexibuprofen, however, is a different form of ibuprofen and could constitute a reasonable alternative to the ibuprofen used in Children's Motrin. *Newman,* 2013 WL 7217197, at *11–12 (dexibuprofen could be a reasonable alternative to ibuprofen because plaintiffs presented evidence that defendants could have received FDA approval); *Wolfe v. McNeil–PPC, Inc.,* 881 F.Supp.2d 650, 661 (E.D.Pa.2012) (allowing plaintiffs' expert to testify that "dexibuprofen is a safer alternative to ibuprofen" to prove plaintiffs' design defect theory).

■ Although the FDA rejected Defendants' initial application to market dexibuprofen in the United States, Plaintiffs have produced evidence that the decision was based on the lack of research into dexibuprofen, and that the FDA might have

granted a second application if Defendants had presented more research. (Abernethy Decl., Ex. 39 at 3; Steffey Decl., Ex. 42 at 12; Ex. 10 at 109.) Plaintiffs have also produced evidence that dexibuprofen is safer than the racemic ibuprofen used in Children's Motrin. (*Id.*, Ex. 112 at 109.) Viewing the evidence most favorably to Plaintiffs, it is sufficient to make dexibuprofen a reasonable alternative.

Plaintiffs have thus produced sufficient evidence that the strict liability factors weigh in their favor. *See Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In these circumstances, I will deny Defendants' Motion for Summary Judgment.

### Negligent Design

■ To prove that Children's Motrin was negligently designed, Plaintiffs must show that Defendants had "a duty to conform to a certain standard of conduct, that the defendant[s] breached that duty, that such breach caused the injury in question, and actual loss or damage." *Wolfe v. McNeil–PPC, Inc.,* 773 F.Supp.2d 561, 571 (E.D.Pa.2011) (internal citation omitted). To determine whether Defendants had a duty, I must examine: "(1) the relationship between the parties; (2) the social utility of [Defendants'] conduct; (3) the nature of the risk imposed and the foreseeability of the harm incurred; (4) the consequences of imposing a duty upon [Defendants]; and (5) the overall public interest in the proposed solution." *Id.* (internal citation omitted).

■ Plaintiffs allege that the risks of SJS and TEN were foreseeable to the manufacturer. (Pls.' Mot. Summ. J., Ex. G at 2 (the FDA informed Defendants in 2005 of the risks of SJS and TEN inherent in Children's Motrin).) They were not, however, foreseeable to the user. (Steffey Decl.; Ex. 8 (the label did not explicitly mention SJS, TEN, hospitalization, death, or epidermal detachment).) The "consequences of imposing a duty" are that Defendants would have been encouraged to use a safer alternative form of ibuprofen, if one existed. Resolving all factual disputes in Plaintiffs' favor, a reasonable jury could conclude that Defendants had a duty to make Children's Motrin safer. Accordingly, I will deny summary judgment.

### D. Punitive Damages

#### Choice of Law

I will apply Pennsylvania law to Plaintiffs' punitive damages claims. There are real differences among the punitive damages laws of Florida, Pennsylvania, and New Jersey. *See* N.J. Stat. Ann. § 2A:58C–5 (banning punitive damages in products liability actions where the FDA has approved the product); *compare In re Engle Cases,* No. 09–10000, 2012 WL 4771237, at *2 (M.D.Fla. Oct. 5, 2012) (plaintiffs must prove the basis for punitive damages by clear and convincing evidence), *and* N.J. Stat. Ann. § 2A:15–5.12(a) (same), *with Wolfe v. McNeil–PPC, Inc.,* 703 F.Supp.2d 487, 493 (E.D.Pa.2010) (requiring only proof by a preponderance); *compare* Fla. Stat. Ann. § 768.725 (limiting recovery for punitive damages), *and* N.J. Stat. Ann. § 2A:15–5.14 (same), *with Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989) (under Pennsylvania law, punitive damages do not need to be proportionate to compensatory damages), *and Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.,* 399 F.3d 224, 233–34 (3d Cir.2005) (using the federal constitutional standard for proportionality between punitive and compensatory damages for Pennsylvania state law claims).

■ The conflict between Pennsylvania and Florida law is false. *See Wolfe v.*

*McNeil–PPC, Inc.,* 703 F.Supp.2d 487, 492 (E.D.Pa.2010). Although Riley Brown was injured in Florida, Defendant McNeil is a New Jersey corporation that manufactured Children's Motrin in Pennsylvania. I agree that Florida has a governmental interest in applying its laws to protect entities within its borders from excessive punitive damages awards, but Florida has no material interest in protecting McNeil—a New Jersey defendant doing business in Pennsylvania. In contrast, Pennsylvania has an interest in applying its stricter punitive damages laws to deter the allegedly wrongful conduct of companies like McNeil doing business in the Commonwealth. *See Hutchison ex rel. Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766, 770 (2005) ("The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others . . . .").

There is a true conflict between New Jersey and Pennsylvania law; I conclude that Pennsylvania has the greater interest here. *Wolfe,* 703 F.Supp.2d at 493 (the court "must apply the law of the state having the most qualitatively significant contacts or relationships with the use of Children's Motrin in this case"). Neither state is the place of injury or relationship. *Id.* Although Defendants suggest that some of the relevant conduct occurred in New Jersey, they have produced no supporting evidence. (Defs.' Supplemental Br. at 19.) On the contrary, Defendants offer letters regarding Children's Motrin that the FDA sent to McNeil's Pennsylvania address, as well as letters that McNeil sent to the FDA from its Pennsylvania address. (Abernethy Decl., Exs. 17, 18, 20, 23, & 25.) Although McNeil is incorporated and has a principal place of business in New Jersey, it is undisputed that it conducts significant business, including the manufacture of Children's Motrin, in Pennsylvania. (*Id.*) Absent actual evidence that relevant conduct occurred in New Jersey,

I conclude that Pennsylvania has a greater interest in application of its laws, and so will apply Pennsylvania law. *See Kelly v. Ford Motor Co.,* 933 F.Supp. 465, 469–70 (E.D.Pa.1996) (conducting an analysis of defendant's conduct within each forum rather than relying on defendant's place of incorporation or business).

*Summary Judgment*

 Punitive damages "may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison,* 870 A.2d at 770 (internal citation omitted). Plaintiffs must show that Defendants' actions or failures to act were "intentional, reckless, or malicious." *Id.* (internal citations omitted). Under a reckless indifference theory, Plaintiffs must show that "the actor knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or fail to act, in conscious disregard of, or indifference to, that risk." *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1097 (1985) (plurality opinion).

 Plaintiffs allege that Defendants knew Children's Motrin could cause SJS and TEN but failed to warn consumers and to market a safer alternative. (Pls.' Resp., Doc. No. 115 at 75–78.) Contrary to Defendants' argument, FDA approval does not protect Defendants from punitive damages. *See Phillips v. Cricket Lighters,* 584 Pa. 179, 883 A.2d 439, 447 (2005) (compliance with regulatory standards alone does not shield defendants from punitive damages). Plaintiffs have produced evidence that Defendants knew of ibuprofen's inherent risks of SJS and TEN, and that that Defendants knew of a safer alternative and failed to conduct clinical trials to gain FDA approval. (Pls.' Mot. Summ. J., Ex. G at 2; Steffey Decl.,

Ex. 39 at 3; Ex. 42 at 12.) In these circumstances, there exists a genuine issue of material fact as to whether Defendants consciously disregarded a risk of physical harm to the Plaintiffs and deliberately failed to act. Accordingly, I will deny summary judgment as to punitive damages.

### E. Manufacturing Defect, Negligent Manufacture, Negligent Marketing or Testing, and Breach of Warranty

Plaintiffs have not brought separate claims for manufacturing defect, negligent manufacturing, and negligent marketing or testing, and withdrew their breach of warranty claims. (Pls.' Resp., Doc. No. 115 at 7, 8, 82.) Accordingly, I will deny Defendants' Motion as moot.

### F. Misrepresentation

To make out their claim of intentional or negligent misrepresentation by concealment of a material fact, Plaintiffs must show that Defendants had a fiduciary duty to disclose the fact. *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F.Supp.2d 400, 408 (W.D.Pa. 2002). To show a "confidential or fiduciary relationship," Plaintiffs must show "a relationship in which trust and confidence were reposed by one side, and domination and influence exercised by the other." *Haydinger v. Freedman*, Civ. No. 98–3045, 2000 WL 748055, at *4 (E.D.Pa. June 8, 2000) (internal citations omitted). Plaintiffs have not produced any evidence that Defendants owed them a fiduciary duty. *See Zafarana v. Pfizer, Inc.*, 724 F.Supp.2d 545, 560 (E.D.Pa.2010) (plaintiffs did not show any basis for finding that a drug company owed a fiduciary duty to consumers). In these circumstances, Plaintiffs have not offered a basis for treating omissions as fraudulent representations. Moreover, Plaintiffs have not produced any affirmative statements that they allege are fraudulent. Accordingly, I will grant summary judgment to Defendants.

### G. Uniform Trade Practices and Consumer Protection Law

Under Pennsylvania's Uniform Trade Practices and Consumer Protection Law, Plaintiffs must establish a "sufficient nexus" between themselves and Pennsylvania. *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D.Pa.2000) (consumer protection laws are generally designed "to either protect state residents or protect consumers engaged in transactions within the state"). That McNeil manufactured Children's Motrin in Pennsylvania is not enough to show that Plaintiffs are "state residents or consumers engaged in transactions within the state." *Id.* at 215. Accordingly, I will grant summary judgment to Defendants.

### H. Claims Against Johnson & Johnson

To hold corporate parent Johnson & Johnson liable for the actions of its subsidiary McNeil, Plaintiffs must show that it is "necessary to avoid injustice." *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 565, 567 (E.D.Pa.1994). Piercing the corporate veil is "an extraordinary remedy and will only be employed in exceptional circumstances." *Id.; see also Bootay v. KBR, Inc.*, No. 2:09–CV–1241, 2010 WL 3632720 (W.D.Pa. Sept. 9, 2010) (Plaintiffs must show corporate form was "used to defeat public convenience, justify wrong, protect fraud or defend crime") (quoting *Kiehl v. Action Mfg. Co.*, 517 Pa. 183, 535 A.2d 571, 574 (1987)), *aff'd*, 437 Fed.Appx. 140 (3d Cir.2011); *see also Erben v. Raymond James European Holdings, Inc.*, No. 8:11–cv–933–T–23AEP, 2011 WL 2601362, at *3 (M.D.Fla. June 30, 2011) ("A plaintiff must demonstrate that the parent exhibited more than a high

degree of control over the subsidiary." (internal citation and quotation marks omitted)).

■■■ Plaintiffs have produced insufficient evidence that Defendants used the corporate form to perpetuate wrongdoing or that refusing to allow Plaintiffs to proceed directly against Johnson & Johnson would be unjust. *See Fort Washington Resources,* 153 F.R.D. at 568 (party "fail[ed] to allege any sort of fraud or injustice necessary to state a claim for piercing the corporate veil" and did not "adequately indicate on what basis [they] intend[ed] to have the corporate veil pierced"). Plaintiffs cite to a congressional hearing on an unrelated recall of adult Motrin, in which Congress held, "Johnson & Johnson had both the legal and moral obligation to do the right thing and they did not." (Steffey Decl., Ex. 24 at 7 (appearing to use "Johnson & Johnson" and "McNeil" interchangeably).) Plaintiffs also cite a 2007 statement from the Johnson & Johnson chief executive officer explaining the company's quality control reorganization, by which Johnson & Johnson's subsidiaries reported to three Johnson & Johnson quality control officers. (Steffey Decl., Ex. 14 at 10.) They have also, however, produced testimony from a McNeil company representative saying, "Only McNeil is responsible for Motrin." (Steffey Decl., Ex. 11 at 3.) This evidence does not tend to prove that Johnson & Johnson used the corporate form to perpetrate injustice, or that it exercised "more than a high degree of control" over its subsidiaries. Accordingly, I will grant summary judgment as to Defendant Johnson & Johnson.

### I. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs seek summary judgment as to eighteen of Defendants' Affirmative De-

fenses. (Doc. No. 105.) Defendants have withdrawn all but Affirmative Defenses Six and Nine, preemption and foreseeability. (Doc. No. 113) I have denied Defendants' Motion for Summary Judgment on its preemption and foreseeability defenses because material questions of fact remain, so I will also deny summary judgment to Plaintiffs on these questions.

## II. *CONCLUSION*

**AND NOW,** this 9th day of December, 2014, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 106), Plaintiffs' Response (Doc. No. 115), Defendants' Reply (Doc. No. 122), Plaintiffs' Supplemental Brief (Doc. No. 126), Defendants' Supplemental Brief (Doc. No. 127), and all related submissions, it is hereby **ORDERED** that Defendants' Motion is **GRANTED in part** and **DENIED in part:**

1. Summary Judgment is **DENIED** as to the failure to warn claims, the design defect claims, and punitive damages;

2. Summary Judgment is **DENIED** as moot as to the manufacturing defect, negligent manufacture, negligent marketing or testing, and breach of warranty claims; and

3. Summary Judgment is **GRANTED** as to the failure to warn physicians claims, the misrepresentation claims, the Pennsylvania Unfair Trade Practices and Consumer Protection Law claims, and all claims against Defendant Johnson & Johnson.

It is **FURTHER ORDERED** that, upon consideration of Plaintiffs' Motion for Summary Judgment (Doc. No. 105) and Defendants' Response (Doc. No. 113), Plaintiffs' Motion is **DENIED.**

**AND IT IS SO ORDERED.**